THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINH WANG, | CASE NO. C24-0447-JCC |
| Plaintiff, | ORDER |
| v. | |
| ESURANCE INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's motion for an order confirming an arbitration award, entering judgment, and collateral estoppel (Dkt. No. 29) and her motion for a protective order (Dkt. No. 32), as well as the parties' joint motion to seal (Dkt. No. 38). Having thoroughly considered the briefing and relevant record, the Court hereby GRANTS Plaintiff's request for an order confirming the arbitration award and entry of a corresponding judgment (Dkt. No. 29 at 4–7), DENIES Plaintiff's request for a collateral estoppel order (*id*. at 7–9), DENIES Plaintiff's motion for a protective order (Dkt. No. 32), and GRANTS the parties' motion to seal (Dkt. No. 38) for the reasons described herein.

I.   **BACKGROUND**

This dispute arises out of a two-vehicle accident that occurred on August 25, 2017 (hereinafter the "Accident") which resulted in significant injuries for Plaintiff. (Dkt. No. 26 at 1.)

ORDER
C24-0447-JCC
PAGE - 1

1  Plaintiff was a passenger in one of the vehicles driven by her husband, Celso Wang (hereinafter

2  "Mr. Wang"). (*Id*.) At the time of the Accident, Plaintiff maintained an automobile insurance

3  policy (hereinafter the "Policy") with Defendant. (Dkt. No. 1-2 at 4; *see generally also* Dkt. No.

4  40-4) (the Policy). The Policy included coverage for, among other items, personal injury

5  protection ("PIP") and bodily injury ("BI") arising from an accident with an underinsured

6  motorist ("UIM"). (Dkt. No. 40-4 at 3.) It also included liability coverage up to $250,000 per

7  person. (*Id*. at 7–8; Dkt. Nos. 33 at 2, 39 at 3.)

8       Plaintiff initially received $10,000 in PIP payments from Defendant. (Dkt. No. 35 at 21–

9  24.) Then, in 2020, Plaintiff filed third-party liability claims in state court against Mr. Wang and

10 the driver of the other vehicle, Lan Duong (hereinafter "Ms. Duong"). (Dkt. Nos. 26 at 1, 33 at 1,

11 40-1 at 7; *see also* Dkt. No. 35 at 28–36) (state court complaint). In 2022, Plaintiff settled her

12 liability claims with Mr. Wang and Ms. Duong. (*See* Dkt. No. 35 at 70–72, 79–80.) Specifically,

13 Plaintiff settled with Mr. Wang for Defendant's full liability coverage of $250,000, (*see id*. at

14 71), and with Ms. Duong for $15,000, though Ms. Duong's liability coverage extended to

15 $100,000,[1] (*see id*. at 79). During this same period, Plaintiff sought UIM coverage from

16 Defendant. (*See* Dkt. No. 1-2 at 5.) Defendant denied her claim. (*See id*. at 10.) Thus, in August

17 2022, Plaintiff demanded UIM arbitration under the terms of the policy, (Dkt. No. 35 at 82; *see*

18 *also* Dkt. No. 40-4 at 19–20) (arbitration provision of UIM policy), to which Defendant agreed,

19 (*see* Dkt. No. 35 at 84).

20      In May 2023, the parties commenced an arbitration hearing before a single arbitrator,

21 Mary Owen, Esq. (hereinafter the "Arbitrator"). (Dkt. No. 42-2 at 1.) The issue to be decided

22 was "[t]he full amount of [Plaintiff's] damages." (Dkt. No. 35 at 117.) On June 30, 2023, the

23 Arbitrator rendered her award and issued a decision letter explaining her calculations and

24 reasoning. (*See* Dkt. No. 30-6 at 2) (arbitration award); (*see also* Dkt. No. 42-2 at 1) (decision

25
26 [1] Defendant contends that Ms. Duong's policy limit was $100,000, but the evidence to which it cites does not reflect this contention. (Dkt. No. 39 at 3) (citing Plaintiff's original settlement demand letter to Mr. Wang and Ms. Duong). Nevertheless, because Plaintiff does not refute this contention, (*see generally* Dkt. No. 41), the Court will take Defendant's word for it.

letter). The Arbitrator awarded Plaintiff a total of $513,143 in damages. (Dkt. No. 30-6 at 2.) After some discussion regarding what payments Defendant could use to "offset" the award,[2] Defendant ultimately resorted to paying Plaintiff her full UIM policy limit of $250,000. (*See* Dkt. Nos. 30 at 3, 35 at 138–50, 40-6 at 2–3.)

In February 2024, Plaintiff initiated the instant action in state court, which Defendant removed to this Court. (*See generally* Dkt. Nos. 1, 1-2.) Plaintiff brings claims of bad faith, violations of Washington's Consumer Protection Act and Insurance Fair Conduct Act, negligence, and breach of contract, all with respect to Defendant's handling of Plaintiff's UIM claim. (Dkt. No. 1-2 at 17–25.) The discovery cutoff is July 21, 2025. (*See* Dkt. No. 28 at 2.)

Plaintiff now seeks various forms of collateral relief, including an order confirming the arbitration award, an order precluding Defendant from relitigating the value of her damages, (*see generally* Dkt. No. 29), and a protective order prohibiting Defendant from subpoenaing documents and testimony from various medical witnesses, (*see generally* Dkt. No. 32). Defendant opposes. (*See generally* Dkt. Nos. 34, 39.)

II.     **DISCUSSION**

    **A.     Plaintiff's Motion for an Order Confirming the Arbitration Award, Entry of Judgment, and Collateral Estoppel (Dkt. No. 29)**

        1.     Confirmation of Arbitration Award and Entry of Judgment

Plaintiff asks the Court to enter an order confirming the $513,143 arbitration award and issue judgment accordingly. (Dkt. No. 29 at 1.) On such a motion, the confirming court must

---

[2] After the Arbitrator shared her award decision, the parties requested that she also determine the total value of "offsets" Defendant could apply to the award. (Dkt. No. 42-8 at 1). Defendant's position was that it was entitled to $360,000 total in offsets: $10,000 from prior PIP payments, $250,000 from a settlement with Mr. Wang, and the full $100,000 policy limit available under Ms. Duong's policy, despite having settled for only $15,000. (Dkt. No. 42-8 at 1.) By contrast, Plaintiff argued that Defendant was only entitled to offset the $250,000 settlement with Mr. Wang. (Dkt. No. 42-11 at 2.) In August 2023, the Arbitrator determined that Defendant was entitled to offset the amounts "Plaintiff received from the underlying policy" and those "legally available" to Plaintiff. (Dkt. No. 35 at 142–44.) However, the Arbitrator did not clarify the monetary offset amounts. (*See id.*) As such, the parties present differing interpretations as to the Arbitrator's offset determination. (*Compare* Dkt. No. 39 at 9, *with* Dkt. No. 41 at 3.)

1  issue the order "unless the award is modified, clarified, or vacated." *AURC III, LLC v. Point Ruston Phase II, LLC*, 546 P.3d 385, 391 (Wash. 2024); RCW 7.04A.220; *see also Chartis Specialty Ins. Co. v. RCI/Herzog*, 2012 WL 238999, slip op. at 8 (W.D. Wash 2012) (explaining that "where the award is unchallenged, a court must confirm the award as issued by the arbitrator"). Indeed, "[a] confirmation action is no more than a motion for an order to render judgment on the award previously made by the arbitrators pursuant to contract." *Price v. Farmers Ins. Co. of Washington*, 946 P.2d 388, 391 (Wash. 1997). In turn, "the court exercises a mere ministerial duty to reduce the award to judgment." *Id*.

Here, the Arbitrator determined that Plaintiff suffered a total loss of $513,143. (Dkt. No. 30-6 at 2) (arbitration award). The parties did not move to modify, clarify, or vacate the award. (*See* Dkt. Nos. 29 at 4–5, 39 at 4–5.) In fact, both parties agree that, at minimum, the Arbitrator awarded Plaintiff a total of $513,143 in damages. (*See* Dkt. Nos. 29 at 5, 39 at 8.) Nevertheless, Defendant asks the Court to "confirm the arbitration award finding Plaintiff's total damages of $513,143, and apply offsets" in the amount of $360,000. (Dkt. No. 39 at 11.) Defendant ostensibly asks the Court to modify the Arbitrator's award.

Washington courts accord "'substantial finality' to arbitration decisions that adhere to the parties' contract and statutory requirements." *AURC III*, 546 P.3d at 388 (citation omitted). As such, judicial review of an arbitration award must be "exceedingly limited." *Id*. In fact, a court may only modify or vacate an award on those narrow grounds listed in the statutes, *see* RCW 7.04A.230(1) and RCW 7.04A.240(1), and only when those grounds appear on the face of the award. *See id.*; *Matter of Marriage of Kuhlmeyer*, 2020 WL 1893612, slip op. at 3 (Wash. Ct. App. 2020). And even then, a party must move for such modification or vacation within 90 days of when it receives notice of the award. RCW 7.04A.230(1); RCW 7.04A.240(1).

Notwithstanding that Defendant is now far beyond the 90-day statutory timeframe to modify, correct, or vacate the Arbitrator's award, (*see* Dkt. No. 30-6 at 2), Defendant also fails to demonstrate any valid basis for the Court to modify the award. Though Defendant argues at length that it is entitled to offsets greater than those the Arbitrator awarded, (*see* Dkt. No. 39 at

8–11), it fails to explain at all how this error appears on the face of the award. (*See id*.) To the contrary, Defendant agrees that the Court "should limit is [sic] ruling [to] the entry of the arbitration award. In this case, the arbitrator [determined that] the damages Plaintiff was entitled to recover from the at-fault parties totaled $513,143." (*Id*. at 8.) Here, the face of the award merely states the following:

| | |
|---|---|
| Past Economic Expenses: | $58,143.00 |
| Past Non-Economic Damages: | $300,000.00 |
| Future Economic Damages: | $55,000.00 |
| Future Non-Economic Damages | $100,000.00 |
| **Total Award:** | **$513,143.00** |

(Dkt. No. 30-6 at 2.) There is no reference to applicable offsets on the face of the award. (*See id*.) And again, the Court "does not have collateral authority to go behind the face of the award." *Price*, 946 P.2d at 391.

Accordingly, the Court GRANTS Plaintiff's request for an order confirming the arbitration award (Dkt. No. 29 at 4–5) and CONFIRMS the arbitration award (Dkt. No. 30-6) in the amount of $513,143. Moreover, because in such contexts the Court must exercise "a mere ministerial duty to reduce the award to judgment," *Price*, 946 P.2d at 391, and seeing no just reason for delay, *see* Fed. R. Civ. P. 54(b), the Court will enter an appropriate partial judgment confirming the arbitration award.

> 2.     Collateral Estoppel

Plaintiff also asks the Court to enter an order prohibiting Defendant from relitigating the value of her loss. (Dkt. No. 29 at 1–2, 7–9.) She argues that the doctrine of collateral estoppel "precludes [Defendant] from maintaining that the damages Ms. Wang is legally entitled to receive from the owner/operator of an underinsured motor vehicle are worth something less than that decided by the arbitrator, or that it is entitled to an offset beyond what the arbitrator determined by agreement of the parties." (Dkt. No. 41 at 6.)

Under Washington law[3], "collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties." *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 960 (2004). For the doctrine to apply, the proponent party must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Id*. at 961. The Court need not investigate each element, however, because Plaintiff's request is premature, if not procedurally improper.

Collateral estoppel is not a form of relief in and of itself. Rather, it is a doctrine that the Court may apply to resolve a dispositive factual dispute before it and grant the appropriate relief thereafter. Indeed, the premise of collateral estoppel is that it "bars *relitigation* of an issue in a subsequent proceeding involving the same parties." *Id*. at 960 (emphasis added). This, of course, presumes that one party is actively seeking to litigate the factual issue in a dispositive manner—often on a motion for summary judgment. *See id*. (doctrine of collateral estoppel appeared before the trial court on a motion for summary judgment); *see also, e.g.*, *Wallace v. Island County*, 2011 WL 6210633, slip op. at 11 (W.D. Wash. 2011) (same), *GLW Ventures LLC v. U.S. Dep't of Agric.*, 261 F. Supp. 3d 1098, 1102–03 (W.D. Wash. 2016) (same).

No such dispositive motion is pending in the case at bar. In turn, that the parties happen to have different interpretations[4] as to the Arbitrator's offset determination and that Defendant *might* relitigate this issue in the future are nevertheless insufficient bases for the Court to apply collateral estoppel at this time. Said differently, regardless of what may be the proper

---

[3] The Court, sitting in diversity, applies Washington's collateral estoppel rules. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002).

[4] Defendant argues that the Arbitrator determined it was entitled to $275,000 in offsets but continues to maintain that it is entitled to greater offsets than that which the Arbitrator determined. (Dkt. No. 39 at 9.) Confusingly, Plaintiff never specifies what she believes was the Arbitrator's final monetary figure for offsets, though her arguments suggest that Defendant is only entitled to offset the $250,000 settlement with Mr. Wang. (*See* Dkt. No. 41 at 3.)

interpretation of the Arbitrator's offset determination, it is not a dispositive factual issue presently being litigated before the Court. This is particularly so where the Court has confirmed the arbitration award irrespective of the Arbitrator's offset determination, *see supra* Section II.A.1. Thus, it is not a matter presently before this Court. Of course, should Defendant seek to challenge the Arbitrator's determinations in a manner that is dispositive to Plaintiff's claims or Defendant's affirmative defenses in *this* action—say, on a motion for summary judgment, a motion for judgment on the pleadings, or at trial—then the Court will reconsider the Plaintiff's request for issue preclusion.

Accordingly, the Court DENIES Plaintiff's request for collateral estoppel (Dkt. No. 29 at 7–9) without prejudice.[5]

### B.     Plaintiff's Motion for a Protective Order (Dkt. No. 32)

Plaintiff asks the Court to enter a protective order preventing Defendant from obtaining

---

[5] Here, the Court is also compelled to address what appears to be Defendant's concerning mischaracterization of purportedly stipulated facts. In its briefing, Defendant argues that "there were two joint tortfeasors who were jointly and severally liable for the Plaintiff's damages: Mr. Wang and Ms. Luong." (Dkt. No. 39 at 10.) And yet, both Defendant's and Plaintiff's submissions to the Arbitrator and subsequently to this Court represent that Mr. Wang was the sole tortfeasor. (*See* Dkt. No. 35 at 117) (Plaintiff's arbitration brief, which Defendant submitted on this record, represents that Defendant has stipulated to the following fact: "Celso Wang was 100% at fault for the collision"); (*see also* Dkt. No. 42-2 at 2) (the Arbitrator's decision letter, which Plaintiff submitted on this record, states "[l]iability is not at issue, as Mr. Wang was completely at fault for the occurrence of this incident"). Thus, as far as the Court sees it, Defendant's aforementioned characterization is just short of a bold-faced lie to the Court.

Of course, the Court also recognizes that Plaintiff initially "advocated for joint and several liability as to the tortfeasors until she recovered less than the applicable underlying limits," thus implying some underlying bad faith on Plaintiff's behalf. (Dkt. No. 39 at 10.) Yet Defendant does not cite to anything on the record to support this contention other than Plaintiff's initial request letter for the UIM policy benefits. (*See* Dkt. No. 39 at 10 n. 25) (citing Dkt. No. 40-9) (letter at issue). It is not unusual for Plaintiff's position to change as her UIM claim develops; it *is* unusual, however, for Defendant to represent one fact to the Arbitrator and then represent the opposite fact to the Court thereafter. The Court reminds Defendant that, per its own policy, the Arbitrator's decision is "binding," (Dkt. No. 40-4 at 20), and there is a strong policy in Washington of according "'substantial finality' to arbitration decisions that adhere to the parties' contract and statutory requirements." *AURC III*, 546 P.3d at 388. As such, the Court cautions Defendant to be very wary and mindful of its representations moving forward in this action and before this Court.

the documents[6] and testimony of six medical witnesses. (Dkt. No. 32 at 1.) One of them, Dr. Linda Wray, M.D., was Defendant's medical expert in the third-party liability claim against Mr. Wang, (*see* Dkt. No. 33 at 3), whereas the other five were listed in Plaintiff's initial disclosures in the instant action, (Dkt. No. 35 at 10, 12–13, 15). Plaintiff's justification for the protective order is two-fold: (1) the requested information is entirely irrelevant; and (2) the time and cost of preparing for depositions and discovery responses is an undue burden. (*See* Dkt. No. 32 at 8–9.)

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant information is "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). As such, relevant information need not be itself admissible, but it must be reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *see Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

Though undoubtedly broad, the right to relevant, nonprivileged discovery is not unequivocal. For instance, on a motion for a protective order, the Court "may, for good cause,

---

[6] Specifically, Defendant commanded the witnesses to produce:

> All documents and materials of any kind now in your possession or under your control that refer, or in any way relate, to Plaintiff Linh Wang, DOB: XX/XX/1979, SSN: XXX-XX-XXXX and/or the lawsuit *Wang v. Wang*, filed in Snohomish County Superior Court, Case No. 20-2- 04109-31, and/or the lawsuit *Wang v. Esurance Ins. Company*, filed in the United States District Court in the Western District of Washington, Case No. 2:24-cv-00447-JCC. This includes, but is not limited to, your complete file, records, charts, bills, invoices, tests, notes, reports, memoranda, medical data, medical records, photographs, video recordings, imagining and imagining records, reports prepared by others, reports prepared by you, meeting notes, testimony notes, hearing notes, pleadings, discovery materials, deposition transcripts, and all communications (including but not limited to emails, letters, facsimiles and text messages), by you and/or any of your staff, with anyone else regarding treatment for Ms. Wang, the tort lawsuit, the underlying UIM arbitration, and the present lawsuit.

(Dkt. No. 32 at 5.)

issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). District courts are vested with broad discretion in determining whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp*., 307 F.3d 1206, 1211–12 (9th Cir. 2002). In turn, the party seeking to limit discovery must demonstrate "good cause" for the protective order, which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Or*., 661 F.3d 417, 424 (9th Cir. 2011).

Plaintiff argues that the six medical witnesses' materials are irrelevant because they have no bearing on what Defendant knew at the time it denied Plaintiff's UIM claim. (*See* Dkt. Nos. 32 at 8, 34 at 1.) Said differently, Plaintiff maintains that her legal claims in this action only bear on what Defendant *actually knew* at the time it made its claim decision. (Dkt. No. 32 at 8.) However, per Plaintiff, "[t]he only information that can be gleaned [from the requested medical records] goes to the underlying personal injuries of Plaintiff, which were already litigated by the parties in binding arbitration." (*Id*.) They "cannot speak to the issue of what [Defendant] knew at the time it made its claim decision, how it handled the UIM claim, whether it acted unreasonably, etc.," by very nature of the fact that Defendant is now requesting the materials well *after* it denied Plaintiff's UIM claim. (*Id*. at 8–9.)

Plaintiff's relevance argument overemphasizes Defendant's actual knowledge and neglects its lesser restrictive counterpart—that is, what Defendant "should have known." Yet, as Plaintiff herself notes, her extracontractual claims also include the "should have known" standard. (*See id*. at 7–8) (Plaintiff's extracontractual claims require analysis of "what the insured knew or *should have known* at the time it made its claim decision") (emphasis added). This standard necessarily implies a lack of actual knowledge. To that end, the requested discovery will assist Defendant with ascertaining what it *should have known* at the time it denied Plaintiff's UIM claim—regardless of whether it had actual knowledge—so it can put forth an adequate defense about why its lack of knowledge regarding certain aspects of Plaintiff's injuries

is nevertheless reasonable. Moreover, as Defendant notes, Plaintiff might argue that Defendant "should have paid the policy limits after reviewing these doctor's reports/declarations." (Dkt. No. 34 at 8.) As such, Defendant is entitled to these materials so it can "prepare a defense for Plaintiff's [anticipated] argument that it should have paid Plaintiff's UIM policy limits sooner." (*Id*.) At bottom, Defendant's requests are relevant for the purpose of preparing an adequate defense to Plaintiff's allegations that Defendant behaved "unreasonably."

In turn, Plaintiff fails to demonstrate good cause for why the Court should enter a protective order. Her primary argument relies on her success in showing irrelevance: "If production of irrelevant documents is inherently an undue burden, then spending time and incurring case costs necessary to prepare [the witnesses] . . . most certainly has to be an undue burden." (Dkt. No. 32 at 9.) But the converse is also true—if the requested documents and testimony *are* relevant, then Plaintiff must expend the necessary time and case costs to prepare such discovery (subject to any other independent showings of undue burden). *See* Fed. R. Civ. P. 26(b)(1). Plaintiff does not otherwise describe any sort of "specific prejudice or harm" that will result absent the Court's entry of a protective order. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 424.

Accordingly, the Court DENIES Plaintiff's motion for a protective order (Dkt. No. 32).

C.    **Joint Motion to Seal (Dkt. No. 38)**

"There is a strong presumption of public access to the court's files." LCR 5(g); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, while the public has a right to inspect and copy public records, including those from judicial proceedings, this right is not absolute. *See United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017). It must yield when sealing a document serves a compelling interest that is substantially likely to be harmed if the document is not sealed and there are no less restrictive alternatives for protecting the interest. *Id.*

The parties jointly request to seal exhibit numbers 4, 10, and 14 contained in the Harris Declaration filed in support of Defendant's opposition to Plaintiff's motion for a protective order (Dkt. No. 35). Exhibit 10 (*id*. at 87–107) appears to be Plaintiff's neurology medical records and

1 is therefore covered by the prior protective order entered in this matter. (*See* Dkt. No. 19 at 3.) Exhibits 4 (Dkt. No. 35 at 38–69) and 14 (*id*. at 115–137) are an independent medical record review conducted by Dr. Wray and Plaintiff's arbitration brief, respectively. These two documents contain Plaintiff's personally identifying information ("PII"). The parties therefore request to seal these two documents and note that Defendant will "refile an errata declaration for exhibits 4 and 14 with redactions to the [PII]." (Dkt. No. 38 at 1.) The Court finds this to be the least restrictive alternative for protecting Plaintiff's PII.

The Court therefore GRANTS the parties' joint motion to seal (Dkt. No. 38) and DIRECTS the Clerk to maintain Docket Number 35 under seal. The Court further ORDERS Defendant to re-file a public copy of Docket Number 35 within fourteen (14) days of this Order, with Exhibit 10 fully under seal and Exhibits 4 and 14 redacted as needed.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's request for an order confirming the arbitration award and a corresponding judgment and DENIES Plaintiff's request for a collateral estoppel order (Dkt. No. 29). The Court will enter a separate judgment as to the arbitration award. The Court further DENIES Plaintiff's motion for a protective order (Dkt. No. 32). Finally, the Court GRANTS the joint motion to seal (Dkt. No. 38) and ORDERS Defendant to re-file a public copy of Docket Number 35 within fourteen (14) days of this Order, with Exhibit 10 fully under seal and Exhibits 4 and 14 redacted as needed. The Clerk is DIRECTED to maintain Docket Number 35 under seal.

DATED this 14th day of May 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE