THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINH WANG, | CASE NO. C24-0447-JCC |
| Plaintiff, | ORDER |
| v. | |
| ESURANCE INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 62, 70). Having thoroughly considered the briefing and relevant record, the Court GRANTS in part and DENIES in part Plaintiff's motion (Dkt. No. 62) and DENIES Defendant's motion (Dkt. No. 70) as described herein.

I.  BACKGROUND

This is an underinsured/uninsured motorist ("UIM") insurance alleged bad faith case involving injuries Plaintiff suffered while riding in a vehicle driven by her husband, Celso Wang (hereinafter referenced as "Mr. Wang"). (*See generally* Dkt. No. 44.) On August 25, 2017, Mr. Wang drifted across State Route 524, colliding with a vehicle driven by Lan Duong (hereinafter "Ms. Duong"). (*See, e.g.*, Dkt. No. 71-1.) At the time, Plaintiff was in the back of the vehicle and unrestrained. (*See* Dkt. No. 71-4 at 3.) She was thrown forward and reported hitting her head.

(*See* Dkt. No. 71-5 at 3.) First responders, upon arriving at the scene, noted that Plaintiff seemed confused, with a visible forehead hematoma. (*See* Dkt No. 71-4 at 2–3.) Plaintiff refused transport, indicating her husband would take her to the hospital, which he did a few hours later. (*Id.* at 3.)

At the emergency room, providers diagnosed Plaintiff with whiplash and a forehead contusion. (Dkt. No. 71-5 at 2–3.) She visited urgent care in the following days, where she complained of dizziness, atypical speech, and forgetfulness. (Dkt. No. 71-35 at 5.) Doctors told Plaintiff that her symptoms would resolve. (*Id.*) They did not. (*Id.* at 4–6.) Persistent symptoms included headaches, impaired cognitive function, dizziness, visual and auditory disturbances, aches and pains, anxiety (especially when riding in a car), depression, and irritability. (*See* Dkt. No. 63-6 at 3–4.) Plaintiff endured a litany of therapeutic and diagnostic procedures and/or interventions over the next few years, without full relief. (*Id.* at 6–18.)

In August 2020, Plaintiff filed suit against Mr. Wang and Ms. Duong for resulting medical expenses and non-economic harms, *i.e.*, pain and suffering and emotional trauma. (*See* Dkt. No. 85-1 at 7.) Ms. Duong settled her case for $15,000 (less than her $100,000 State Farm auto policy limit). (*See* Dkt. Nos. 63-43 at 2, 71-19 at 12, 71-25 at 2, 71-27 at 2–3.) Mr. Wang—and by extension Defendant—then became the sole party liable for Plaintiff's harms, as the couple maintained an auto insurance policy with Defendant. (Dkt. No. 40-4.) Applicable policy limits were $250,000 liability, $10,000 personal injury protection ("PIP"), and $250,000 UIM. (*See* Dkt. No. 71-6 at 3.) Eventually, Defendant paid Plaintiff the $10,000 in PIP, along with Mr. Wang's $250,000 liability policy limit. (*See* Dkt. Nos. 71-13 at 2, 71-24 at 2.) This left the $250,000 UIM policy, which Plaintiff first demanded in 2019. (Dkt. Nos. 63-4 at 3, 71-20 at 2.)

In support, Plaintiff provided Defendant with medical summaries and supporting documentation. (*See* Dkt. No. 63-6 at 3–9.) This included a November 2019 neuropsychological evaluation, diagnosing a "mild traumatic brain injury/concussion." (Dkt. No. 63-7 at 2–4.)

ORDER
C24-0447-JCC
PAGE - 2

Nevertheless, Defendant refused Plaintiff's UIM demand,[1] contending that other available coverage would sufficiently compensate Plaintiff. (*See* Dkt. No. 71-26 at 2.)[2] Defendant did not further formally explain its basis for its refusal(s), even when requested to do so. (Dkt. No. 62 at 11–12.) This is because, according to Chris Geweke, Defendant's Rule 30(b)(6) deponent, "a response [to Plaintiff's request] wasn't warranted" as "it was clear . . . this particular matter was headed to arbitration." (Dkt. No. 63-22 at 19.)

Thus, the parties turned to arbitration, which occurred in May 2023. (*See* Dkt. Nos. 52 at 2, 63-28, 71-30 at 2.) In preparation, Defendant engaged ophthalmologist Timothy Carey, M.D., as its sole medical expert (despite Plaintiff's reported constellation of medical complaints). (*See* Dkt. Nos. 63-29 at 2–4, 71-30 at 2–3.) Dr. Carey performed a medical records review and issued a report finding no causal connection between the accident and Plaintiff's reported symptoms. (*See generally* Dkt. No. 71-31.) Dr. Carey noted that Plaintiff had a pre-existing visual esotropia for which Plaintiff sought surgical treatment in a third-world country. (*See* Dkt. No. 71-31 at 42.) This was not correct—Dr. Carey later conceded that he mixed up Plaintiff's file with another's (at least partly). (*See* Dkt. No. 63-36 at 2.) Despite this error, Defendant did not retract Dr. Carey's report or otherwise disclose the matter to Plaintiff or the arbitrator. (*See* Dkt. Nos. 52 at 3, 84 at 8–9.) Instead, Defendant elected not to call Dr. Carey to testify at the arbitration proceeding. (*See* Dkt. Nos. 63-34, 63-35.) But the arbitrator still considered Dr. Carey's report. (*See* Dkt. No. 52 at 3.) Although she limited consideration of the report to Plaintiff's alleged visual deficiencies, given Dr. Carey's lack of expertise elsewhere. (*See* Dkt. No. 63-38 at 5.)

Based on the totality of evidence presented, the arbitrator found Plaintiff "met her burden of proof relating to her claimed symptoms being the result [of the auto accident]." (*Id.*) She then awarded Plaintiff $513,143, comprised of $113,143 in past and future economic damages, *i.e.*,

---

[1] Plaintiff calls this refusal a "denial," (Dkt No. 62 at 9), while Defendant says it was a "letter . . . rejecting [Plaintiff's] demand," (Dkt. No. 70 at 9).

[2] Defendant reiterated this position after Plaintiff submitted additional supporting medical evidence. (*See* Dkt. Nos. 63-24, 63-25, 63-26, 63-27.)

medical bills, and $400,000 in past and future non-economic damages. (*Id.* at 6.) However, this did not end the story, as the parties remained at odds regarding offsets, which they presented to the arbitrator, who again sided with Plaintiff. (*See* Dkt. Nos. 63-43 at 2, 63-45 at 2, 63-48 at 4.) With this, Defendant paid the full UIM policy limit. (*See* Dkt. No. 63-49 at 2.)

In April 2024, given her protracted pursuit for UIM payment(s), Plaintiff sued Defendant in Snohomish County Superior Court, asserting bad faith claim handling, along with negligence, breach of contract, and violations of Washington's Consumer Protection Act ("CPA") and its Insurance Fair Conduct Act ("IFCA"). (*See generally* Dkt. No. 1-2.) Defendant removed the matter to this Court. (Dkt. No. 1.)

In anticipation of trial, the parties cross-move for summary judgment. As a preliminary matter, Plaintiff moves to strike some of Defendants' experts' opinions. (Dkt. Nos. 93 at 14–16, 99 at 1–4.) Plaintiff then seeks judgment as a matter of law as to the following: (a) the preclusive effect of the prior arbitration to this matter, *i.e.*, collateral estoppel; (b) all of Plaintiff's claims; and (c) some of Defendant's affirmative defenses. (*See generally* Dkt. No. 62.) Defendant, in contrast, seeks judgment as a matter of law in its favor on most of Plaintiff's claims. (*See generally* Dkt. No. 70.)

## II.   DISCUSSION

### A.   Plaintiff's Motion to Strike

Plaintiff first asks the Court to strike the following expert opinions: Linda Wray, M.D.'s and Ting Ting Zhou M.D.'s medical opinions, along with Lola Hogan's insurance good faith opinion. (Dkt. Nos. 93 at 14–16, 99 at 1–4); (*see* Dkt. Nos. 70 at 8, 9, 18–18, 21, 22, 25; 84 at 18 n.85, 20 n.96, 22 n.102, 23 n.106) (the briefing and exhibits at issue).

As to doctors Wray and Zhou, Plaintiff contends that, because Defendant did not consider those opinions when denying Plaintiff's UIM claim, Defendant cannot now offer such opinions. (*See* Dkt. Nos. 93 at 14–16, 99 at 1–3.) Specifically, says Plaintiff, doing so would run afoul of Federal Rules of Evidence 401, 402, 403, and 702. (*See id.*) But, as previously explained, Dr. Zhou's report (Dkt. No. 71-35) speaks to what Defendant *should have known* about Plaintiff's

injuries based on the records available when it denied Plaintiff's UIM claim. (*See* Dkt. Nos. 44 at 9–10, 60 at 4.) The same is true for Dr. Wray's opinions. (*See* Dkt. No. 71-24.) Thus, these medical opinions satisfy Rules 401, 402, 403, and 702 (at least for purposes of the instant motion(s)).

However, Ms. Hogan's insurance industry opinion (Dkt. No. 90-1) is another matter. Plaintiff contends that Ms. Hogan's report solely offers legal opinions and/or opines on ultimate issues in this matter. (*See* Dkt. No. 99 at 3–4.) As such, it is of no help to the fact finder, meaning, it fails to satisfy Rule 702, and further runs afoul of Rules 401, 402, and 403 (albeit for different reasons). (*Id.*) The Court already ruled that Ms. Hogan's opinion is excluded pursuant to Rule 702. (*See* Dkt. No. 60 at 2–4.) There is no need to retread that ruling here.

Accordingly, the Court DENIES Plaintiff's motion to strike with respect to Dr. Zhou's and Dr. Way's opinions but GRANTS the motion with respect to Ms. Hogan's opinion. The report (Dkt. No. 90-1) and all references to it in Defendant's briefing (Dkt. Nos. 84 at 18 n.85, 20 n.96, 22 n.102) are hereby STRICKEN for purposes of rendering a decision on the parties' cross-motions.

### B. Parties' Cross-Motions

#### 1. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering such a motion, the Court views the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Conversely, if that showing is made, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting

Fed. R. Civ. P. 56(e)).

### 2. Collateral Estoppel

Plaintiff first asks the Court to find that the arbitration award precludes Defendant from now arguing that Plaintiff was entitled to less than the full $250,000 policy limit (*i.e.*, collateral estoppel applies in this instance as a matter of law). (Dkt. No. 62 at 19.) Again, Defendant already paid the UIM policy limit. (*See* Dkt. No. 63-49 at 2.) But it now contends it need not have done so. Rather, it should only have paid $238,143 (the $513,143 arbitration award, net of offsets for the $10,000 PIP, Mr. Wang's $250,000 liability, and Ms. Duong's $15,000 settlement). (*See* Dkt. No. 84 at 13–16.)

Under Washington law,[3] "collateral estoppel, or issue preclusion, bars relitigating an issue involving the same parties." *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 960 (2004). For the doctrine to apply, the proponent must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Id*. at 961.

There is no dispute that these elements are satisfied. (*See generally* Dkt. Nos. 62 at 19–21, 84 at 12–16, 99 at 4–6.) Instead, resolution of Plaintiff's request appears to rise or fall on the interpretation of the arbitrator's award. Following the award here, the parties sought clarification on the amount of offset available,[4] presenting the following options to the arbitrator: $10,000 in PIP, Mr. Wang's $250,000 liability settlement, and Ms. Duong's State Farm policy (whether that be the $100,000 policy limit or the resulting $15,000 settlement). (*See* Dkt. No. 63-45 at 2.) In

---

[3] The Court, sitting in diversity, applies Washington's collateral estoppel rules. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002).

[4] Defendant's initial position was that Ms. Duong's full $100,000 State Farm policy limit should be available, even though Plaintiff ultimately settled with Ms. Duong for only $15,000. (*See* Dkt. Nos. 63-42 at 2, 63-46 at 2, 63-47 at 2.) Thus, said Defendant, only $153,143 need be paid from UIM coverage to satisfy the arbitration award. (*Id.*) Unsurprisingly, Plaintiff disagreed, maintaining that the full UIM limit of $250,000 was due and owing. (*See* Dkt. No. 63-46 at 2.)

response, the arbitrator noted that amounts "legally available" could offset the award but not the "the full policy limits." (Dkt. No. 63-48 at 4) (citing *Allstate Ins. Co. v. Dejbod*, 818 P.2d 608, 613 (Wash. Ct. App. 1991).

When again queried as to whether Defendant should "interpret this to mean that we are not entitled to offset [Ms. Duong's] State Farm policy," the arbitrator indicated "[y]ou may offset the amount that the Plaintiff *received* from the underlying policy." (Dkt. 63-48 at 3–4) (emphasis added). From this, for inexplicable reasons, Defendant concluded that only Mr. Wang's $250,000 liability settlement could be used as an offset. (*See* Dkt. No. 63-49 at 2.) This is not in accordance with what the arbitrator's determination. Rather, she adjudged that, in addition to the $250,000 Mr. Wang liability policy (and settlement), Ms. Duong's $15,000 settlement should offset the award (rather than her $100,000 State Farm policy limit).

What the arbitrator did not address, though, is what to do with the PIP. (*See generally* Dkt. 63-48 at 2–4.) By statute, UIM applies to the extent that "all bodily injury or property damage liability bonds and insurance policies . . . is less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1). And here, the policy bars duplicate payments (which is what Plaintiff now argues for in seeking what she describes as summary judgment on collateral estoppel). (*See* Dkt. No. 40-4 at 14.) As such, the answer is clear: PIP offset *is* warranted. *See Keenan v. Indus. Indem. Ins. Co. of the N.W.*, 738 P.2d 270, 273 (Wash. 1987), (*overruled on other grounds by Price v. Farmers Ins. Co. of Washington*, 946 P.2d 388 (Wash. 1997)); *see, e.g.*, *Safeco Ins. Co. v. Woodley*, 8 P.3d 304, 308 (Wash. Ct. App. 2000) (affirming trial court's reduction of UIM award for PIP benefits paid based on right to recovery policy language).

Thus, the Court GRANTS in part and DENIES in part summary judgment to Plaintiff on the issue of collateral estoppel. It finds **as a matter of law** that both PIP and Ms. Duong's settlement should offset the UIM coverage (along with Mr. Wang's liability settlement). As a

result, Plaintiff was entitled to is $238,143[5] in UIM, rather than the $250,000 she received. Nevertheless, this $11,857 overpayment has no import on the viability of Plaintiff's claims in *this* case, as addressed below.

3. IFCA

IFCA provides a right of action for an unreasonable coverage denial or benefit payment. *See* RCW 48.30.015. Here, it is unrefuted that Defendant paid the UIM policy limit. (*See* Dkt. No. 63-49 at 2.) But this is not dispositive. While there is no controlling authority, and the persuasive authority is conflicting, it is the Court's present view that a policy limit payment does not *necessarily* defeat a cause of action for an IFCA violation. *See Cohodas v. Contl. Ins. Co.*, 717 F. Supp. 3d 1008, 1014–15 (W.D. Wash. 2024) (collecting cases). Rather, at issue is whether the delayed payment resulted from a "good faith dispute" over the claim's value. *Id.* at 1015.

Plaintiff argues that by assigning no value to Plaintiff's UIM claim (prior to arbitration), Defendant made an unreasonable denial or benefit payment. (*See* Dkt. Nos. 62 at 27–28, 93 at 17–21.) This is somewhat misleading. According to the uncontroverted record, Defendant valued Plaintiff's injuries, just did so at less than other available coverage. (*See, e.g.*, Dkt. No. 85-2 at 2–3) (as of March 2021, Defendant estimated $42,472 in medical expenses and between $75,000 and $125,000 in non-economic damages). While this produced a zero UIM valuation, that is not the same as saying Defendant did not assess Plaintiff's damages *at all* (or that Defendant's assessment was facially unreasonable). *See, e.g., Gamble v. State Farm Mut. Automobile Ins. Co.*, 2020 WL 6286816, slip op. at 4 (W.D. Wash. 2020) (IFCA mandates that insurer must make a "reasoned evaluation of the facts").

Rather, it appears the parties were generally in agreement regarding Plaintiff's medical expenses, at least on what she incurred to date. But the parties diverged on Plaintiff's likely future medical expenses and the quantum of her non-economic harms more generally. This was,

---

[5] Again, this is comprised of the following: the $513,143 arbitration award, offset by the $10,000 PIP, $250,000 Mr. Wang's liability, and Ms. Duong's $15,000 settlement.

in part, because (a) Plaintiff was in a prior auto accident (so it was difficult to discern the distinct medical impacts from each accident) and (b) she continued to work throughout the adjustment period (suggesting minimal impact(s) from the current accident). (*See, e.g.*, Dkt. Nos. 86-7 at 3–8; 87-4 at 5–6, 15–16.) Fundamentally, the reasonableness of the parties' valuation divergence is a genuine issue of fact for which the Court will not usurp the jury's role in addressing. *See, e.g., Jin v. GEICO Advantage Ins. Co.*, 700 F. Supp. 3d 988, 992–93 (W.D. Wash. 2023) (declining to resolve similar IFCA-related questions "at this stage of the case").

Accordingly, the Court DENIES summary judgment to both parties on Plaintiff's IFCA cause of action.

4.      Bad Faith / Negligent Claim Adjustment

Plaintiff argues that Defendant demonstrated negligence and bad faith throughout the protracted UIM claim adjustment process, (Dkt. No. 62 at 21–27), which caused Plaintiff emotional distress and frustration, including feelings of discrimination. (*See, e.g.*, Dkt. No. 94-15 at 4–16.) Plaintiff concedes that the *amount* of harm, and thus the appropriate recovery, remains a question of fact. (*See* Dkt. No. 93 at 25.) Nevertheless, the parties seek summary judgment on foundational issue(s).

Insurer bad faith and negligence claims "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty. To establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008). In the UIM context, "'the insurer must deal in good faith and fairly as to the terms of the policy and not overreach the insured, despite its adversary interest.'" *Ellwein v. Hartford Acc. and Indem. Co.*, 15 P.3d 640, 647 (Wash. 2001), *as amended* (Jan. 18, 2001), *overruled on other grounds by Smith v. Safeco Ins. Co.*, 78 P.3d 1274 (2003) (quoting *Hendren v. Allstate Ins. Co.*, 672 P.2d 1137, 1141 (N.M. App. 1983)). And to establish negligence, a plaintiff need only demonstrate that and insurer "fail[ed] to use ordinary care" even if it did not "act in bad faith." *First State Ins. Co. v. Kemper Nat. Ins. Co.*, 971 P.2d 953, 959 (Wash. Ct. App. 1999)

1       In her complaint, Plaintiff contends that Defendant violated RCW 48.01.030 and WAC
2 284-30-330, 360 by virtue of (a) Defendant's pre-arbitration (zero) valuation of Plaintiff's UIM
3 claim, (b) Defendant's alleged lack of supporting medical evidence for its valuation, (c) its
4 alleged failure to explain the basis for its valuation (or otherwise effectively communicate on the
5 issue prior to arbitration), and (d) Defendant's use of Dr. Carey's flawed medical report during
6 the arbitration process. (Dkt. No. 1-2 at 6–19, 22–23.) In cross-moving, the parties alternatively
7 suggest there are no genuine issues of fact regarding what did or did not occur (or at least
8 whether such conduct would constitute bad faith and/or negligence), and thus they each seek
9 judgment as a matter of law as to Plaintiff's causes of action. (*See* Dkt. Nos. 62 at 21–27, 70 at
10 19–23.)

      The Court notes as a starting point that Defendant's approach to Dr. Carey's report is
troubling. Plaintiff presents uncontested evidence that the report contained a serious error, (*see*
Dkt. No. 63-36 at 2), and that Defendant knew about the error yet failed to notify anyone
throughout the arbitration process (even going so far as to resubmit the report *after* discovering
the error), (*see* Dkt. Nos. 63-30 at 21, 63-34 at 2, 63-35 at 2). And, again, it is uncontroverted
that the arbitrator considered the report (including the error) when assessing Plaintiff's visual
injuries. (*See* Dkt. Nos. 52 at 3, 63-38 at 5.) In response, Defendant suggests that this was a
"simple error" which Plaintiff's expert noted prior to arbitration so Defendant had no obligation
to disclose it. (Dkt. No. 84 at 22–24.) This rationale is beyond the pale. Defendant's conduct is a
clear a violation of 284-30-330(1) and RCW 48.01.030 (and likely Washington's Rules of
Professional Conduct). No reasonable juror could conclude otherwise. Accordingly, the Court
finds, as a matter of law, that this conduct represents bad faith claim processing (and if for some
reason it were not, it certainly would be negligent claims processing).

      The facts surrounding Plaintiff's remaining bad faith and negligence assertions are less
clear. Plaintiff contends that, based on the alleged conduct described above, Defendant violated
WAC 284-30-330(2), (4), (7), (13), and WAC 284-30-360(3). (*See* Dkt. No. 62 at 23–27.) But
the record establishes genuine issues of fact as to each; specifically, *what* took place and *whether*

it was reasonable on Defendant's part and/or comported with industry norms for UIM claims processing. (*See, e.g.*, Dkt. Nos. 63-22 at 2–19, 63-23 at 2–23, 63-25 at 4–15, 63-27 at 2, 63-30 at 2–38, 71-33 at 11–15, 71-35 at 2–24, 85-1 at 2–7, 85-2 at 2–4, 86-9 at 2, 86-7 at 2–31.)

Accordingly, the Court GRANTS summary judgment to Plaintiff on its bad faith claim as **it relates to its conduct surrounding Dr. Carey's report at arbitration** but DENIES summary judgment to the parties on the remaining bad faith and/or negligent claims processing assertions. If this matter proceeds to trial and resulting damages are assessed based on Defendant's use of Dr. Carey's report at arbitration, given the egregiousness of this conduct, at a minimum, the Court is inclined to treble that amount and award attorney fees in accordance with RCW 48.30.015(2), (3).

5. <u>CPA</u>

Plaintiff also contends that Defendant's conduct violated the CPA. (Dkt. No. 62 at 28–29.) To prevail, Plaintiff must establish each of the following: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533–35 (Wash. 1986); RCW 19.86.060. "Violations of WAC 284-30-330 are per se violations of [the CPA]." *Truck Ins. Exch. V. Vanport Homes, Inc.*, 58 P.3d 276, 284 (Wash. 2002) (citing *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997)). Similarly, an insurer's "bad faith constitutes a per se violation of the CPA." *Ledcor Indus. (USA), Inc. v. Mut. Of Enumclaw Ins. Co.*, 206 P.3d 1255, 1262 (Wash. Ct. App. 2009).

Thus, Defendant's use of Dr. Carey's report at arbitration satisfies the first three elements of a CPA claim,[6] leaving to the jury only the quantum of injury and causation. Conversely, and for similar reasons, the Court cannot find that there is *or is not* a CPA violation as a matter of law for the other alleged conduct,[7] as genuine issues of fact remain regarding *what* Defendant

---

[6] *See supra* Section II.B.4.

[7] *Id.*

did and *whether* that conduct was reasonable. Accordingly, the Court GRANTS summary judgment to Plaintiff on her CPA claim as to the first through third elements, solely with respect to Defendant's use of Dr. Carey's report at arbitration, and DENIES summary judgment to both parties on all remaining aspects of Plaintiff's CPA claim.

### 6. Breach of Contract

Finally, Plaintiff asserts Defendant breached its insurance contract with Plaintiff, when viewed through the lens of Washington's duty of good faith for such agreements. (*See* Dkt. No. 1-2 at 23–24.) Plaintiff seeks summary judgment based on this assertion. (Dkt. No. 62 at 29–30.) Indeed, insurance contracts contain an implied duty of good faith. *See St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 667 (2008). But Plaintiff fails to explain *how* such a duty applies in a *UIM context*, where the insurer "stand(s) in the shoes of the tortfeasor." *Hamm v. State Farm Mut. Auto. Ins. Co.*, 88 P.3d 395, 397 (2004). (*See generally* Dkt. Nos. 62 at 29–30, 99 at 15.) In such instances, the insurer lacks the prototypical enhanced or fiduciary-like duty. *See Schreib v. Am. Family Mut. Ins. Co.*, 2015 WL 5175708, slip op. at 3 (W.D. Wash. 2015) (citing *Ellwein*, 15 P.3d at 647 (2001)). Plaintiff does not address this issue in support of its motion. And the Court will not do Plaintiff's work for her (which would be necessary to support a finding as a matter of law that some of the conduct discussed above necessarily constitutes a breach of contract). Thus, the Court DENIES summary judgment to Plaintiff on her breach of contract claim.

### 7. Affirmative Defenses

Lastly, Plaintiff seeks summary judgment on affirmative defenses 1–7 and 9–13. (Dkt. No. 62 at 31–32.) At trial, the defendant has the burden of proof here. *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981). Thus, because Plaintiff moves for summary judgment, she need only show that Defendant does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). And here, Plaintiff contends that Defendant fails to put forth *any* evidence in support of these defenses. (*Id.*) In response, Defendant does not meaningfully address or point

1  to evidence in support of defenses 1–5 or 9–13 (other than to reserve the issues for trial). (*See*
2  Dkt. No. 84 at 28–30.) It only offers evidence in support of defenses 6 and 7. (*Id.*) Thus, it fails
3  to establish that it can carry its burden at trial regarding these defenses. The Court GRANTS
4  summary judgment to Plaintiff on defenses 1–5 and 9–13 and DENIES summary judgment to
5  Plaintiff on affirmative defenses 6 and 7.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Plaintiff's motion to strike, (Dkt. Nos. 93 at 14–16, 99 at 1–4), is GRANTED with respect to Ms. Hogan's opinion but DENIED as to Dr. Zhou's and Dr. Way's opinions;
- Plaintiff's motion for summary judgment as to the collateral estoppel effect of the arbitration award and resulting offsets, (Dkt. No. 62 at 19), is GRANTED in part and DENIED in part;
- Plaintiff's motion for summary judgment is GRANTED as to her bad faith and negligence causes of action as well certain elements of her CPA claim with respect to Defendant's use of Dr. Carey's report at arbitration, (*id.* at 25–26, 28–29);
- The motions for summary judgment on all remaining affirmative claims, (Dkt. Nos. 62 at 21–30, 70 at 13–24), are DENIED; and
- Plaintiff's motion for summary judgment on Defendant's affirmative defenses 1–7 and 9–13, (Dkt. No. 62 at 30–32), is GRANTED in part and DENIED in part.

//
//
//

DATED this 7th day of October 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE