THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINH WANG, | CASE NO. C24-0447-JCC |
| Plaintiff, | ORDER |
| v. | |
| ESURANCE INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's renewed motion for sanctions (Dkt. No. 138). Having thoroughly considered the briefing and the relevant record, the Court GRANTS the motion for the reasons explained herein.

## I.   BACKGROUND

As previously described, this is an underinsured/uninsured ("UIM") motorist insurance bad faith case arising out of a 2017 motor vehicle collision. (*See generally* Dkt. No. 95.) The Court described the relevant facts and procedural history in prior orders. (*See generally* Dkt. Nos. 59, 95, 107.) It will not repeat that information here.

Presently at issue is Defendant's alleged noncompliance with discovery orders as to the production of certain claims-handling manuals, reference materials, training materials, and materials from "Toolkit"—a third-party informational application relied on by Defendant's employees. (*See* Dkt. Nos. 138 at 3, 139-1 at 3.) Defendant failed to produce this information

ORDER
C24-0447-JCC
PAGE - 1

following an order from the Court, (Dkt. No. 95), which Plaintiff asserts was a willful violation of a clear order. (*See* Dkt. No. 138 at 10–11.) For this reason, and following extensive motion practice, Plaintiff now asks the Court to sanction Defendant by finding default as to liability on Plaintiff's bad faith, negligent claim handling, Insurance Fair Conduct Act ("IFCA"), and Consumer Protection Act ("CPA") claims. (*See id.* at 16.)[1] In response, Defendant contends Plaintiff is relitigating her prior sanction request, on the same record. (*See* Dkt. No. 141 at 13; *see generally* Dkt. No. 133.) But the record now before the Court suggests otherwise.

Throughout this case, culminating with its briefing on Plaintiff's renewed motion, Defendant has subjected Plaintiff to unnecessary motion practice for clearly discoverable information and made dubious representations (including to the Court).[2] (*See generally, e.g.*, Dkt. Nos. 50–52, 55–56, 74–75, 119–20, 129–30, 138–40, 143.) At this point, a serious sanction is warranted.

---

[1] This is in addition to the Court's prior finding that, as a matter of law, Defendant's proffering of a medical expert report (containing false or misleading information) at arbitration amounted to bad faith and negligent claim processing, thus also satisfying the first three elements for Plaintiff's CPA claim (to the extent based on that conduct). (*See* Dkt. No. 107 at 10–11.)

[2] The Court has repeatedly cautioned Defendant that its approach is problematic. This includes the following warnings: (1) "The Court is also compelled to address what appears to be Defendant's concerning mischaracterization of purportedly stipulated facts," (Dkt. No. 44 at 7) (regarding Defendant's representations that two tortfeasors were liable for Plaintiff's injuries, when it had represented to the Arbitrator (and later to this Court, too) that only one tortfeasor existed); (2) "[t]hus, as far as the Court sees it, Defendant's aforementioned characterization is just short of a bold-faced lie to the Court," (*id.*) (regarding the same); (3) "[t]he Court cautions Defendant to be very wary and mindful of its representations moving forward in this action," (*id.*) (regarding Defendant's inconsistent representations to the Arbitrator and this Court); (4) "[t]he Court notes as a starting point that Defendant's approach to Dr. Carey's report is troubling . . . the report contained a serious error . . . Defendant knew about the error yet failed to notify anyone throughout the arbitration process (even going so far as to resubmit the report *after discovering* the error)," (Dkt. No. 107 at 10) (emphasis in original); (5) "[d]efendant's conduct [submitting an expert report it knew to have inaccurate information] is a clear violation of 248-30-330(1) and RCW 48.01.030 (and likely Washington's Rules of Professor Conduct). No reasonable juror could conclude otherwise," (*id.*).

## II.    DISCUSSION

### A.    Legal Standard

Rule 37(b)(2)(A) provides the Court authority to impose sanctions—"just orders"—when a party fails to obey a discovery order issued pursuant to Rule 37(a). Such sanctions may include, but are not limited to, striking pleadings, dismissing the action in whole or in part, or rendering a default judgment against the disobedient party. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

### B.    Defendant's Discovery Conduct

Based on prior seemingly obstructionist discovery conduct, the Court ordered Defendant, pursuant to Rule 37(a), to produce "all claims manuals, reference materials, training materials, and complete training logs" sought by Plaintiff—not just those Defendant deemed relevant or proportional. (Dkt. No. 59 at 4.) The Court also ordered Defendant to request and produce materials from Toolkit. (*Id.* at 4–5.) Then, on Defendant's motion (Dkt. No. 66), the Court clarified the scope of its compulsion order—erring on the side of production because of "Defendant's recalcitrance to date in producing discoverable information." (Dkt. No. 95 at 2.) Nevertheless, because Defendant failed to comply, Plaintiff now seeks a default sanction. (*See generally* Dkt. No. 138.)

Before considering whether to impose such a serious sanction, the Court must (of course) affirmatively find that Defendant willfully failed to comply. *See, e.g.*, *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (internal citation and quotation marks omitted). For the reasons described below, the Court makes this finding. Namely, Defendant has and is being disobedient by (a) continuing to withhold training and claims processing materials within its control which it was previously ordered to produce and (b) relying on a clear typographical error to assert that it had no obligation to request information from Toolkit, when other pleadings and orders demonstrate that it did.

ORDER
C24-0447-JCC
PAGE - 3

1. <u>Claim Handling Materials</u>

Defendant seemingly admits that it did not produce fulsome discovery for Bates EIC 7913 (Claims Training "Managing Unconscious Bias"), EIC 7915–8422 (Claims Training PowerPoints), and EIC 8423–8468 (Allstate Claims Training Documents). (*See* Dkt. Nos. 138 at 11, 141 at 6–8.) This is because, says Defendant, these materials are irrelevant as they are specific to claims handling procedures for its *parent* companies, Allstate and National General, not its own. (*See* Dkt. No. 141 at 6–7.) This argument is unpersuasive. Relevant information itself need not be admissible—it need only be reasonably calculated to lead to the discovery of admissible evidence. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002); *see Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). And refusing to produce them is inconsistent with this Court's prior command that Defendant produce *all* reference and training materials.[3] Defendant's Rule 30(b)(6) designee, Mr. Woolfolk, declared that he reviewed the materials Plaintiff still seeks, suggesting they are indeed relevant. (*See* Dkt. No. 126 at 2.) Further, as Plaintiff points out, Allstate and National General employees assisted Defendant in adjusting Plaintiff's claim (in fact Defendant's prior Rule 30(b)(6) designee testified to being a supervisor at National General). (*See* Dkt. No. 143 at 6) (citing Dkt. Nos. 67 at 1, 71-30 at 6).

Admittedly, the Court's prior order compelling Defendant to disclose all claims training materials did not specifically command production of the aforementioned Bates numbers. (*See generally* Dkt. No. 59.) But the order's sweeping language made clear that it will not seriously entertain relevancy objections now.[4] And more, the Court already explicitly found "[t]he

---

[3] Notably, the Court did not indicate any disclosure exceptions; in fact, the Court articulated concern over Defendant's discovery behavior, (*see* Dkt. No. 95 at 2), and suggested that Plaintiff renew her motion for sanctions if Defendant's conduct did not change. (*See* Dkt. No. 133 at 2.) Defendant should have heeded that warning.

[4] Put simply, "[t]he discovery system depends absolutely on good faith and common sense from counsel. The courts . . . do not have the resources to police closely the operation of the discovery

ORDER
C24-0447-JCC
PAGE - 4

requested materials—including the Claims Handling Guidelines, training logs, and other resources for Esurance claim adjusters—are relevant as they may lead to admissible evidence." (*Id.* at 4.) As such, the Court ordered production of *all* "claims manuals, reference materials, training materials, and complete training logs"—not those *Defendant* deemed relevant.

### 2. Toolkit Materials

In response to the instant motion, Defendant asserts that the Court ordered Plaintiff—not Defendant—to request information directly from Toolkit. (*See id.* at 9.) As such, Defendant had no further discovery obligation. This argument is beyond the pale. Admittedly, the most recent order compelling production of this information contained a typographical error. (*See* Dkt. No. 95 at 3.) But Defendant's purported confusion from it is implausible and obtuse, in light of the unambiguous history here. The Court ordered Defendant—not Plaintiff—to request Toolkit materials on earlier occasions. (*See* Dkt. No. 59 at 6.) The most recent order was simply an attempted restatement of past instructions. (*See* Dkt. No. 95 at 3.)

The Court stated in that same order that Toolkit being a third-party "does not absolve *Defendant* of its obligation pursuant to the Court's order [to request information from Toolkit]." (*Id.*) (emphasis added). And regardless, in prior pleadings and orders, every single discussion of Toolkit centered on *Defendant's* obligation to produce information from it—not Plaintiff's. (*See* Dkt. No. 59 at 2, 4–5, 7) ("Plaintiff further seeks an order compelling *Defendant* to produce all relevant materials within a third-party website called 'Toolkit'") ("Plaintiff also moves to compel *Defendant* to produce content from a third-party website called 'Toolkit'") (At a minimum, *Defendant* must request the materials from 'Toolkit' or show that such a request was made and denied") ("Accordingly, the Court ORDERS *Defendant* to request the relevant materials from

process." *O'Connor v. Boeing N. Am. Inc.*, 185 F.R.D. 272, 284 (C.D. Cal. 1999) (internal citation omitted); *see also Neal v. City of Bainbridge Island*, 2023 WL 2214245, slip op. at 2 (W.D. Wash. 2023) (in discovery, counsel "should strive to be cooperative, practical, and sensible.") Common sense should have dissuaded Defendant from advancing relevancy objections for information the Court already deemed relevant.

ORDER
C24-0447-JCC
PAGE - 5

'Toolkit'") ("*Defendant* must request permission from 'Toolkit' to produce the relevant materials, and then produce those materials if granted permission") (emphasis added); (Dkt. No. 95 at 3) ("As to third-party Toolkit materials, the Court ordered *Defendant* to 'request permission from "Toolkit" to produce relevant materials, and then produce those materials if granted permission'") ("To be clear, relevant materials contained in Toolkit information are those accessible and available to *Defendant* and its employees *while adjusting and/or otherwise handling Plaintiff's insurance claim*. It is not clear from *Defendant's* submissions whether the information produced to date satisfies this requirement.") (emphasis added).

Defendant's seeming reliance on this error demonstrates (at best) intransigence and (at worst) bad faith in litigating this action. Had there been any question who had the production obligation, Defendant could have reached out for clarification or sought reconsideration, as it previously has in this matter. (*See* Dkt. Nos. 66, 108.) But it did not.

### C.      Resulting Sanction(s)

Even where the willfulness standard is met, a default sanction may only be imposed where "extreme circumstances . . . threaten to interfere with the rightful decision of the case." *Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (internal citation and quotation marks omitted). We are now at that point. The accident resulting in Plaintiff's insurance claim was in 2017. Now, following protracted claim adjustment (and demonstrated bad faith), trial is finally scheduled to begin—in just a few weeks. (*See generally* Dkt. No. 131.) Yet Defendant continues its obstructionist conduct in withholding needed discovery, despite clear orders otherwise.[5]

---

[5] The Court notes that, in addition to conduct discussed elsewhere, while minor, Defendant failed to submit a verification page with its answers to Plaintiff's first interrogatories and requests for production, resulting in unnecessary Court intervention. (*See* Dkt. No. 59 at 6.) Defendant responded by suggesting that it substantially complied, even after the Court said otherwise. (*See* Dkt. No. 66 at 3–4.) At each stage in this litigation, Defendant has played fast and loose with its discovery obligations in what it has described to the Court as a "relatively straight-forward bad faith lawsuit." (Dkt. No. 53 at 5.)

ORDER
C24-0447-JCC
PAGE - 6

Nevertheless, before entering a default sanction, the Court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the [C]ourt's need to manage its docket; (3) the risk of prejudice [to the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996) (citing *Thompson v. Housing Auth. of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986)). Collectively, in this instance, these factors favor a harsh sanction, namely default (as to liability) as to each of Plaintiff's claims, leaving only proximate causation and damages for trial.

As to the first factor, "the public's interest in expeditious resolution of litigation always favors dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (internal citation omitted). As to the second fact, this Court "is in the best position to determine whether the delay in a particular case interferes with docket management." *Id.* Defendant's conduct has been obstructive, inappropriate, and not reasonably calculated to advance this litigation in good faith. Moreover, it offends the public's interest in an expeditious resolution and interferes with the Court's ability to manage its docket. Thus, the Court finds the first and second factors weigh in favor of default.

As to the third factor, a plaintiff "suffers prejudice if the [defendant's] actions impair the [plaintiff's] ability to go to trial or threaten to interfere with the rightful decision of the case." *In re PPA*, 460 F.3d 1217, 1227 (9th Cir. 2006) (internal citations omitted). Defendant's consistent refusal to provide fulsome discovery prejudices Plaintiff by precluding her from developing her case through discovery. That prejudice cannot be cured by anything short of default because Defendant has repeatedly shown it is unwilling to abide by Court rulings (*i.e.*, provide basic discovery materials when ordered to do so), even weeks before trial is to commence.

As to the fourth factor, it typically weighs against dismissal because, as a general matter, public policy favors disposing of cases on the merits. *See Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998). The same is true here.

ORDER
C24-0447-JCC
PAGE - 7

As to the fifth factor, the Ninth Circuit acknowledges that even though "there are a wide variety of sanctions short of dismissal available, the district court need not exhaust them all before finally dismissing a case." *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). Courts need only reasonably explore "possible and meaningful alternatives" to the sanction of default or dismissal. *Id.* If a party fails to comply with a court's discovery order "'due to inability, and not to willfulness, bad faith, or any fault of the disobedient party, the harshest sanction of dismissal is improper.'" *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (quoting *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958)). But, of course, here the Court finds that Defendant's conduct has been willful; thus, a harsh sanction is proper.

Collectively, these factors do indeed warrant the serious sanction Plaintiff requests,

**III.   CONCLUSION**

For the foregoing reasons, Plaintiff's renewed motion for sanctions (Dkt. No. 138) is GRANTED. The Court now FINDS that Defendant acted in bad faith, negligently handled Plaintiff's claim, unreasonably denied her claim for benefits under IFCA, and violated the CPA.[6] All that remains for trial is Plaintiff's damages on each of these claims and establishing proximate causation of those damages.

So DATED this 1st day of May 2026.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

[6] As previously mentioned, the Court found as a matter of law that Defendant engaged in bad faith, demonstrated negligence, and satisfied certain CPA elements. (*See* Dkt. No. 107 at 11–12.) This Rule 37(b)(2) sanction expands this finding, albeit on different procedural grounds.

ORDER
C24-0447-JCC
PAGE - 8